**Calvin A. PRUITT,\* Petitioner,**

v.

**Essie I. PRUITT, Respondent.**

Family Court of Delaware,
New Castle County.

Submitted March 24, 1982.

Decided March 29, 1982.

Everett P. Priestley, Wilmington, for petitioner.

Michael J. Goodrick, Wilmington, for respondent.

GALLAGHER, Judge:

On March 24, 1982, the court heard evidence on a petition for divorce filed herein by petitioner and contested by respondent. All of the allegations of the divorce petition have been admitted except for the following allegation which respondent denies:

"6. The marriage is irretrievably broken and is characterized by separation caused by incompatability. Reconciliation is improbable."

■ Chapter 15, Delaware Divorce and Annulment Act, is to be liberally construed as provided in 13 *Del.C.* § 1502:

\*   \*   \*   \*   \*   \*

"(3) To make the law of divorce effective for dealing with the realities of matrimonial experience by making irretrievable breakdown of the marriage relationship the sole basis for divorce;

(4) To permit dissolution of a marriage where the marriage is irretrievably broken despite the objection of an unwilling spouse;

\*   \*   \*   \*   \*   \*

■ The elements or inquiries for proving incompatability were defined in *S. v. S.*, Del.Fam., No. 30,323, (June 26, 1980),[1] as follows:

"1. Was there rift or discord in the marriage?

2. Was the rift or discord sufficient to destroy a normal and wholesome marriage relationship?

3. Did the parties separate as a consequence of their incompatibility?

---

\* A pseudonym adopted to protect the privacy of the parties.

1. The opinion also appears in 6 *Family Law Reporter* 2733, August 12, 1980.

(4. Is reconciliation improbable?) [2]

In order to grant a divorce decree for incompatibility all of the above questions must be answered affirmatively.

The parties were married on December 12, 1972. No children were born of the marriage. Each party was previously married. Petitioner left the marital domicile in May, 1981, because he was "tired of being there." He testified that months went by and there were no sexual relations as a consequence of respondent's refusal.

Petitioner testified that he and respondent did not get along. They fought and argued about the weather, money and almost everything else. He concedes they were equally at fault. According to petitioner, the difficulties started last year. They could not be together for more than ten minutes without arguing. He sees no hope for reconciliation and wants to be divorced.

This decision is not free from difficulty. Petitioner and respondent continue to have social contacts with each other. Once since the separation they engaged in sexual relations. On three or four occasions she has visited his apartment at his invitation. He has visited the former marital residence on occasion. He has eaten dinner there. He has spent the night there sleeping on the sofa. But petitioner insists that the disagreements are more intense and bitter now than they were when they lived together. Their "friendship" survives only because they stay away from each other for a week or so after a disagreeable encounter.

Respondent admits that there have been problems in the marriage. She says that they have argued over money and matters pertaining to her son, Anthony. But she regards these arguments as normal, married couple arguments. While she has asked him to return home she did admit to having locks on doors changed.

■ I am satisfied from a preponderance of the evidence that there has been rift and discord in the marriage, that the rift and discord were sufficient to destroy a normal wholesome marriage relation and that the parties separated as a consequence of their incompatibility. Significantly, the parties are in basic disagreement as to whether they are compatible with each other. The only remaining question is whether reconciliation is improbable.

It is clear from the testimony that petitioner does not want to be married to respondent any longer. He sees no hope of reconciliation. He has no interest in counseling.

Respondent wants to remain married to petitioner. She wants him back home but admits not knowing whether they can get back together again. She would like counseling if petitioner would agree. If it were possible I gather that she would like the court to arrange counseling for the parties.

With respect to counseling it is my view that forced counseling is worthless. By the time litigants reach this court the possibility of counseling salvaging the marriage relationship is almost nonexistent. We are judges not marriage counselors or moral dictators. It is not our mission to promote unilateral marriages. It really would not be fair to order the parties into counseling with the agreement of only one of them. Imagine the indignity a party might suffer in forced counseling where the marriage is in shambles and the other party seeks counseling merely to fuel the fires of his or her own neurosis. Fortunately, it is provided in 13 *Del.C.* § 1517(b) that:

"In contested cases, after a hearing the Court shall:

(1) Rule upon the petition; or

(2) Continue the matter *with the consent of both parties* for further hearing not more than 60 days later so that the parties may seek counseling, either with a qualified private counselor or an accredit-

---

**2.** The statute speaks of "reconciliation (that) is improbable." *S. v. S., Supra.,* and *Samuel S. v. Roseanne S.,* Del.Fam., File No. 2294–80 (June 12, 1981) mention "reasonable possibility of reconciliation." In my view, there is no difference between the statutory and decisional language; but we should be using the statutory language.

ed counseling agency, public or private. *No party who objects shall be forced to submit to counseling*, and all counseling or interviews shall be confidential and privileged and only the fact that further efforts at reconciliation are impractical or not in the interest of the parties shall be reported to the Court. At the adjourned hearing the Court shall finally determine whether the marriage is irretrievably broken." (Emphasis added.)

Under the above statute the court has two options. One, to rule upon the petition immediately or, two, to continue the matter with the consent of the parties as provided above; but the matter cannot be continued for counseling without the consent of both parties.

A recent decision in *Jane Grim v. John H. Grim*, Del.Fam., File No. 1025, 1981, (March 15, 1982) may appear to be in conflict with the above ruling. If *Grim* were interpreted as standing for the proposition that this court can continue a divorce hearing and *compel* divorce litigants to engage in marriage counseling I would disagree with it because the statute expressly prohibits forced counseling. I, however, interpret the decision as merely "requesting"[3] the parties to engage in counseling before ruling on the petition and, although I would not do that, the decision can be reconciled with the statute on that basis. Presumably,

if counseling did not occur the improbability of reconciliation would then clearly be established.

There is nothing in the evidence to indicate that these parties will reconcile their differences and become husband and wife again. Rather, the evidence is just the opposite. Petitioner points out that the contacts that the parties have had with each other since the separation are social rather than matrimonial contacts. He insists that there is no possibility of reconciliation. I am inclined to agree. If as time passes the parties should find a way to successfully relate to each other again and choose to remarry that would provide a happy resolution for today's incompatibility.

I will grant the divorce petition. The parties are divorced as of the date of this decision. Appropriate rule 465 letters should be filed with the court within 10 days if they wish retention of jurisdiction for ancillary relief.

IT IS SO ORDERED.

---

**3.** The court did "... request the parties to participate in marriage counseling for (a) peri- od of time..." (p. 10).